FILED & JUDGMENT ENTERED
Steven T. Salata

March 29 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **CASE NO. 18-30426** |
| **ACE MOTOR ACCEPTANCE** | ) | |
| **CORPORATION** | ) | **CHAPTER 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |

**EMERGENCY INTERIM CONSENT ORDER (I) AUTHORIZING THE DEBTOR'S
USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION, AND (III) SCHEDULING A FINAL HEARING**

Before the Court is the *Emergency Motion of the Debtor For Order Authorizing The Use
of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code; Motion for
Hearing on Shortened Notice* (the "**Motion**") [Docket No. 16] filed by debtor ACE Motor
Acceptance Corporation (the "**Debtor**"). A preliminary hearing on the Motion was held by the
Court on March 29, 2018 (the "**Hearing**"). Having reviewed and considered the record, and it
appearing to the Court that the Debtor, the Lender (as defined herein) and the Junior Creditors

(as defined herein) stipulate and consent to the findings of fact and the terms of relief granted in this Order, the Court HEREBY FINDS AS FOLLOWS:

A.     On March 15, 2018 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"). The Debtor continues in possession of its property and operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.     The Debtor provides financing for automobile dealerships, including for dealerships that are described or referred to as "Buy Here, Pay Here" automobile dealerships.

D.     The Debtor is indebted to Hamilton State Bank, a Georgia banking corporation ("**Lender**") under a revolving line of credit loan for up to $16 million (the "**Loan**") that is evidenced by, among other instruments, that certain Loan Agreement dated November 1, 2016, between the Debtor and Lender (as modified and amended from time to time, and together with the other documents that evidence, secure, guaranty or relate to the Loan, the "**Loan Documents**").

E.     Lender contends that the outstanding principal balance of the indebtedness owed under the Loan Documents as of the Petition Date is approximately $10,416,450.75 not including Lender's claims for interest, charges, fees (including attorney's fees), expenses, penalties or other possible amounts (the "**Senior Debt**"), and that the Senior Debt is secured by a first priority lien and security interest granted to Lender upon substantially all of the assets of the Debtor, including (i) all of the Debtor's accounts and accounts receivable, (ii) all of the Debtor's

2

chattel paper, (iii)   all of the Debtor's contract rights and general intangibles, including

trademarks and deposit accounts, (iv) all of the Debtor's books and records, including customer

lists, (v) all of the Debtor's furniture, fixtures and equipment, (vi) all of the Debtor's inventory

and all other tangible personal property of the Debtor, (vii) all monies of the Debtor on deposit

with Lender as of the Petition Date, and (vii) all licenses and authorizations issued to the Debtor

(collectively, and as further defined in the Loan Documents, the "**Pre-Petition Collateral**").

      F.     The Debtor alleges that it has separately granted security interests or liens

in some or all of the Pre-Petition Collateral to the following related persons or entities

(collectively, the "**Junior Creditors**"): John G. Algood Living Trust; Russell E. Algood

Revocable Trust; Steven A. Cook; Malvin Algood; Jeffrey Algood; Polly Williams; Stuart

Algood; Shirley Cook; Don Brown; and The Malvin L. Algood Living Trust.   The liens and

security interests in the Pre-Petition Collateral were allegedly granted to the Junior Creditors (the

"**Junior Liens**") to secure certain loan(s) extended by one or more of the Junior Creditors to the

Debtor (the "**Junior Debt**"), and the Junior Liens are alleged to be junior and/or subordinate to

the Lender's security interests and liens in the Pre-Petition Collateral.  As of the Petition Date,

the principal amount of the Junior Debt equals approximately $7,000,000.00.

      G.     For purposes of this Order, the monies and income derived from the Pre-

Petition  Collateral constitute "cash collateral" of the Lender and Junior Creditors within the

meaning of 11 U.S.C. §§ 363(a) and 363(c)(2), and such monies are referred to herein as "**Cash**

**Collateral**".

      H.     The Debtor requires the use of certain Cash Collateral to adequately

maintain or operate its business, and serious harm to the Debtor and the Debtor's estate may

occur absent the Debtor's use of the Cash Collateral.

CC Order v5

I.      As evidenced by the signatures of the parties or their counsel below, the Debtor, the Lender and the Junior Creditors consent to the entry of this Order, and sufficient cause exists for granting the relief set forth herein.

J.      As reflected by the certificate(s) of service filed by the Debtor with the Court, and in accordance with Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules, adequate notice under the circumstances of the Motion, the Hearing,  and the emergency relief requested in the Motion has been provided by the Debtor to all parties required or entitled to receive notice, including to (i) the Bankruptcy Administrator, (ii) the Lender, (iii) the Junior Creditors or their authorized representative, (iv) the Debtor's 20 largest creditors, (v) the IRS, and (vi) any other parties that are known to assert an interest in the Cash Collateral.  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and the notice given by the Debtor complies with Bankruptcy Rules 2002 and 4001.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      <u>Interim Relief Granted</u>. The Motion is granted on an interim basis according to the terms and provisions of this Order, and this Order supersedes the prior order entered by the Court on March 26, 2018, with respect to the Motion [Dkt. No. 20].  As used herein, the term "**Interim Period**" shall mean the period commencing from the Petition Date and ending on the sooner to occur of (a) April 24, 2018, and (b) a Termination Event (as defined in Section 12 below).

2.      <u>Authorization To Use Cash Collateral</u>.   During the Interim Period, the Debtor is authorized to use Cash Collateral to pay (a) the Chapter 11 fees owed in this case by the Debtor pursuant to 28 U.S.C. §  1930 or otherwise, provided that such fees shall be paid first

from any other income and monies of the Debtor's estate that do not constitute Cash Collateral of

the Lender, and (b) the monthly expenses items in the budget attached hereto as Exhibit "A" (the

"**Budget**") that are actually incurred by the Debtor in the ordinary course of its business and that

are not prohibited by any provision of this Order (the "**Authorized Expense Payments**").

Such payments by the Debtor shall not exceed the amounts listed in the Budget by more than

five percent (5%) with respect to any single line item or by more than ten percent (10%) with

respect to all line items in the aggregate, unless the Debtor first receives Lender's written

consent.   Unless and until Lender acknowledges in writing that the Senior Debt owed to Lender

has been paid and satisfied in full, no Cash Collateral shall be paid by the Debtor to the Junior

Creditors or to any other party with respect to any indebtedness secured by the Junior Liens.   No

Cash Collateral shall be used pursuant to the Budget to pay any pre-petition claim against the

Debtor other than (x) amounts specifically approved by the Court, including payroll, and (y)

payments made to the Lender for application to the Senior Debt as provided in Section 6(b) of

this Order.   Notwithstanding anything to the possible contrary in the Budget or otherwise, no

Cash Collateral or other monies of the Debtor's estate shall be paid (i) for purposes of providing

any "retention bonuses" to any employees of the Debtor, or (ii) for purposes of  paying

compensation, benefits or other amounts that may be owed to any terminated or former

employees of the Debtor; provided, however, this Order shall not prejudice the Debtor from

filing a separate motion to seek payment of such items.

   3. DIP Account(s). All Cash Collateral received by the Debtor shall be

deposited into one or more debtor-in-possession bank accounts at financial institutions that are

FDIC-insured (the "**DIP Account(s)**") and shall be segregated from any other monies received

by the Debtor that do not constitute Cash Collateral of Lender, or at a minimum, such Cash

Collateral shall be accounted for on Debtor's books and records such that the Cash Collateral of Lender is clearly and separately identifiable from any other monies that may be commingled with the Cash Collateral, and in the event of such commingling, the Debtor shall be deemed to have disbursed the non-Cash Collateral funds on a first-out basis prior to disbursing the Cash Collateral of Lender. All disbursements from the DIP Accounts shall be accounted for in the monthly debtor-in-possession operating reports to be filed by the Debtor with the Court.

4. <u>Funds In Accounts with Lender</u>. So long as a Termination Event shall not have occurred, the Debtor shall be entitled to access and utilize Cash Collateral that may be on deposit, either now or in future, in the bank accounts that the Debtor established pre-petition with Lender (the "**Lender Deposit Accounts**"), and Lender shall allow Debtor to transfer Cash Collateral that may be located in such Lender Deposit Accounts in accordance with the normal practices that were followed by the parties prior to the Petition Date.

5. <u>New Financing</u>. The Debtor may use up to a maximum $300,000.00 of Cash Collateral of the Lender, or such additional amounts as Lender may expressly consent to in writing, to make or purchase new vehicle loans in the ordinary course of the Debtor's business, but only if such loans would constitute an eligible receivable under the "Borrowing Base" formula set forth in the Loan Documents with Lender.

6. <u>Lender Adequate Protection</u>. For purposes of providing adequate protection to the Lender for the Debtor's use of Cash Collateral, the following items shall be provided to Lender or, as applicable, undertaken by Debtor.

a) <u>Lender Replacement Liens</u>. Without limiting any security interests or liens that are granted or extended to Lender pursuant to 11 U.S.C. § 552(b), Lender is hereby granted a security interest in all of the Debtor's post-petition property and assets that are

6

of the same type and kind as described in the Loan Documents (the "**Post-Petition Collateral**" and together with the Pre-Petition Collateral, the "**Lender Collateral**"), including without limitation, all of the Debtor's post-petition accounts receivables and chattel paper, and all proceeds therefrom (the "**Lender Replacement Liens**"). Notwithstanding anything to the contrary, the Lender Replacement Liens shall <u>not</u> extend to the proceeds received by Debtor or the Debtor's estate pursuant to any avoidance actions arising under Sections 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code. The Lender Replacement Liens shall secure repayment of the Senior Debt owed to Lender but in an amount equal to the diminution in value of the Lender's interest in the Pre-Petition Collateral resulting from (i) the Debtor's use of Cash Collateral, or (ii) the imposition of the automatic stay and the Debtor's use, sale, consumption or disposition of such Pre-Petition Collateral.   The Lender Replacement Liens shall have the same validity and priority as Lender's security interests and liens in the Pre-Petition Collateral as of the Petition Date, and they shall be deemed automatically valid and perfected upon entry of this Order without further filing or recordation by Lender or the Debtor.

b)    <u>Cash Payments</u>.   On a weekly basis, the Debtor shall pay to Lender a sum equal to the amount of cash received by Debtor from collections (or that otherwise come into Debtor's control or possession) that is in excess of the Authorized Expenses Payments allocated for payment that week in the Budget (the "**Excess Cash Payments**"). Such Excess Cash Payments are generally projected at the first page of attached <u>Exhibit "B"</u> in the line item labeled "Cash Remaining Payable to HSB".   Such Excess Cash Payments shall be made to Lender by 1:00 pm on the Friday of each consecutive week following the entry of this Order.   Lender shall be entitled to apply the Excess Cash

Payments to the outstanding  Senior Debt until such indebtedness and obligations are paid and discharged in full.  To the extent there is any dispute regarding Lender's application of such cash proceeds, such dispute is reserved for future adjudication by this Court.

c)      <u>Financial Reports</u>.   On a weekly basis, the Debtor shall provide cash flow reports to Lender in substantially the same form attached hereto as <u>Exhibit "B"</u>  (the "**Cash Collateral Reports**") unless a different form of reporting is agreed to by Lender in writing.   Such weekly Cash Collateral Reports shall be due at the same that the weekly Excess Cash Payments are due to Lender.

d)      <u>Insurance</u>.  The Debtor shall obtain or maintain insurance for the Lender Collateral to the extent such insurance is required under the terms and provisions of the Loan Documents (if at all), and upon request the Debtor shall provide proof of any such required insurance to Lender.

e)      <u>Proof of Incurred Expenses</u>. Upon request by Lender, the Debtor shall provide copies of any invoices or other documents to substantiate any Authorized Expense Payments made by the Debtor.

f)      <u>Inspection Access</u>.  Lender and its respective representatives and agents shall be authorized, during normal business hours, to audit, inspect or examine the Lender Collateral or the Debtor's books and records; provided, however, that the Debtor and Debtor's counsel must be provided with at least two (2) days prior notice of the intent of Lender or any such representative to do so.   The Debtor shall cooperate in providing Lender with information or copies of documents  reasonably requested by Lender with

8

Case 18-30426   Doc 32   Filed 03/29/18   Entered 03/29/18 15:09:48   Desc Main
Document   Page 9 of 23

respect to the Lender Collateral, including copies of dealer agreements or other documents pertaining to the Debtor's receivables and chattel paper.

7.   <u>Superpriority Claim</u>.  To the extent the Lender Replacement Liens do not provide Lender with adequate protection of its interests in the Pre-Petition Collateral, then Lender shall be entitled to a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code as necessary to fully compensate Lender for the use of its Cash Collateral by the Debtor.

8.   <u>Junior Creditors Replacement Liens</u>.  For purposes of providing adequate protection to the Junior Creditors for the Debtor's use of Cash Collateral, and without limiting any security interests or liens that are granted or extended to Lender pursuant to 11 U.S.C. § 552(b), the Junior Creditors are hereby granted a security interest in all of the Debtor's post-petition property and assets that are of the same type and kind as described in the loan documents that evidence the Junior Debt (the "**Post-Petition Collateral**" and together with the Junior Creditor's interests in the Pre-Petition Collateral, the "**Junior Creditors Collateral**"), including without limitation, all of the Debtor's post-petition accounts receivables and chattel paper, and all proceeds therefrom (the "**Junior Creditors Replacement Liens**").  Notwithstanding anything to the contrary, the Junior Creditors Replacement Liens shall <u>not</u> extend to the proceeds received by Debtor or the Debtor's estate pursuant to any avoidance actions arising under Sections 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code.   The Junior Creditor Replacement  Liens shall secure repayment of the Junior Debt but in an amount equal to the diminution in value of the Junior Creditors' interest in the Pre-Petition Collateral resulting from (a) the Debtor's use of Cash Collateral, or (b) the imposition of the automatic stay and the Debtor's use, sale, consumption or disposition of such Pre-Petition Collateral.   The Junior Creditors Replacement

9

Liens shall have the same validity and priority as the Junior Creditors' security interests and liens in the Pre-Petition Collateral as of the Petition Date, and they shall be deemed automatically valid and perfected upon entry of this Order without further filing or recordation by the Junior Creditors or the Debtor.

9. <u>Deadline for Objection to Lender's Claim</u>.   Any challenges or objections (collectively, a "**Challenge**")  to the Lender's claim (the "**Lender Claim**")  by the Debtor including (a) any objection to the amount, validity, perfection, enforceability, priority, or extent of the Senior Debt or any security interests relating thereto, or (b) any defense, claim, cause of action, or offset against Lender relating to any actions or failure to act with respect to the Lender's Loan Documents, shall be made by initiating an appropriate contested matter or adversary proceeding that is timely filed no later than 90 days after the Petition Date in The Debtor's case (the "**Objection Deadline**").   In the event a Challenge is not timely filed by the Objection Deadline, then the Debtor shall be deemed to have waived any objections or defenses to the Lender Claim and the Debtor shall be deemed to have stipulated and agreed that the amount of the debt set forth in the Lender Claim constitutes a fully secured, allowed claim that is not subject to defense, counterclaim, setoff, recharacterization or subordination; <u>provided</u>, <u>however</u>, the Debtor shall retain the limited right to object to the reasonableness of any post-petition fees and charges (including attorney's fees) that are not quantified in the Lender Claim at the time it is filed with the Court and that are incurred or quantified by Lender after the Lender Claim is filed.   Nothwithstanding the foregoing, the stated Objection Deadline shall not apply to any subsequently appointed Chapter 11 Trustee or Chapter 7 Trustee for the Debtor; provided, however, nothing herein shall preclude Lender from requesting a modification of the terms of this Section 9 in any final order on the Motion.

CC Order v5

10. <u>Cash Collateral Subject to Liens</u>. Until expended by the Debtor, all Cash Collateral shall remain subject to the asserted liens and claims of Lender and the Junior Creditors under their respective loan documents and this Order.

11. <u>Modification of Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified and lifted to the extent necessary to implement the provisions of this Order and permit Lender to apply payments received from the Debtor to the Senior Debt and, if deemed desirable by Lender, to file or record any instruments to evidence, validate, or perfect the Lender Replacement Liens or other adequate protection granted by this Order to Lender.

12. <u>Termination of Cash Collateral Usage</u>. The Debtor's authorization to use Cash Collateral shall terminate immediately upon the occurrence of any one or more of the following events (each a "**Termination Event**"): (i) the conversion or dismissal of the Debtor's chapter 11 case; (ii) failure by the Debtor to pay or provide  to Lender the Excess Cash Payments and Cash Flow Reports that are required pursuant to this Order if not cured within three (3) days after delivery by Lender to Debtor (and copy by email and regular mail to Debtor's counsel) of written notice of such default; (iii) the entry of an Order by the Court granting relief from the automatic stay to Lender to foreclose upon the Lender Collateral; (iv) the entry of an Order appointing a Chapter 11 Trustee for the Debtor or authorizing the sale of substantially all of the assets of the Debtor; (v) the Debtor's breach of any other obligations imposed by the terms and provisions of this Order if not cured within ten (10) days after delivery to Debtor (and copy by email and regular mail to Debtor's counsel) of written notice of such default; or (vi) this Order is amended, vacated, stayed, or reversed without the prior written consent of Lender.   Upon the occurrence of a default by the Debtor with respect to its obligations to pay or provide the Excess

11

Cash Payments and Cash Flow Report, Lender may temporarily freeze all Lender Deposit Accounts with the Debtor until such time as the default is timely cured or until the Court rules on any emergency motion for stay relief that is promptly filed by Lender after such default.

13.    Survival of Provisions of This Order. The provisions of this Order and any action  taken pursuant to the terms hereof shall survive the entry of any order that may be entered dismissing this case or converting the case to Chapter 7 of the Bankruptcy Code, and the liens granted pursuant to this Order shall continue and shall retain their priority in this case or in any superseding case under the Bankruptcy Code.

14.    Order Immediately Effective. Notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise, the effectiveness of this Order shall not be stayed, and this Order shall be immediately effective upon its entry

15.    Reservation of Rights.    This Order shall not be construed as an adjudication by the Court respecting the nature, amount, validity, priority or perfection of any pre-petition liens or security interests asserted against the Debtor or the Debtor's property. Furthermore, this Order shall not be construed as a waiver by the  Debtor, the Lender, or the Junior Creditors of any rights, claims, defenses, or objections they may have (a) respecting any requests for relief from the automatic stay under 11 U.S.C. § 362(d), (b) respecting demands for further adequate protection in addition to those provided by this Order, (c) respecting any future requests by either party to modify the terms of this Order, (d) respecting any claims or assertions regarding diminution in value of the collateral securing the Senior Debt or the Junior Debt,  (e) respecting any other forms of relief that Lender may seek in the Debtor's case, including seeking the appointment of a trustee or emergency motions to terminate the use of Cash Collateral, or (f) respecting any request by Lender to seek in any final order for this Motion a shortened time

12

period for the Objection Deadline pertaining to the Lender Claim.  Any interested party may move for a modification or reconsideration of this Order at any time.  Nothing herein waives Lender's right to seek additional adequate protection or relief in any final order pertaining to the Motion.

16.    <u>Final Hearing</u>.  A final hearing on the Motion shall be held on April 24, 2018 at 9:30 a.m. in Courtroom 1-4, United States Bankruptcy Court, 401 W. Trade Street, Charlotte, North Carolina 28202   (the "**Final Hearing**").   Debtor's counsel shall serve this Interim Order (which shall constitute adequate notice of the Final Hearing) upon all known parties that are required or entitled to receive notice and shall file a certificate of service with the

13

CC Order v5

Court.  Any parties objecting to the relief set forth herein shall file a written objection

with the Court no later than three business days prior to the Final Hearing.

| **DEBTOR** | **LENDER** |
|---|---|
| Consented To: | Consented To: |
| | |
| /s/James H. Henderson | /s/ Kiah T. Ford IV, Esq. |
| James H. Henderson | Ashley A. Edwards, Esq. (N.C. Bar No. 40695) |
| State Bar No. 13536 | Kiah T. Ford IV, Esq. (N.C. Bar No. 20979) |
| THE HENDERSON LAW FIRM | PARKER POE ADAMS & BERNSTEIN LLP |
| 1201 Harding Place | Three Wells Fargo Center |
| Charlotte NC 28204-2826 | 401 S. Tryon Street, Suite 3000 |
| Telephone:    704.333.3444 | Charlotte, NC  28202 |
| Facsimile:    704.333.5003 | Tel: (704) 335-9534 |
| Email:        henderson@title11.com | Fax: (704) 334-4706 |
| *Proposed Counsel for Debtor ACE Motor* | |
| *Acceptance Corporation* | -- and -- |
| | |
| **JUNIOR CREDITORS** | Brad Baldwin |
| Consented To: | Georgia Bar No. 034220 |
| | Hecht Walker, P.C. |
| | 205 Corporate Center Drive, Suite B |
| /s/ Russell Algood | Stockbridge, GA 30281 |
| Russell Algood | (404) 348-4881 |
| | |
| *Authorized Representative for* | *Counsel for Hamilton State Bank* |
| *The Junior Creditors* | |

This Order has been signed                    United States Bankruptcy Court
electronically.  The Judge's
signature and Court's seal
appear at the top of the Order.

CC Order v5

# Exhibit "A"
# Budget

CC Order v3

| Average Receivables | 28,836,369 | 26,689,403 | 20,603,758 | 13,672,895 | 8,277,703 |
|---|---|---|---|---|---|
| | 1 | 0.93 | 0.71 | 0.47 | 0.29 |
| | (0.07) | (0.21) | (0.24) | (0.19) | (0.10) |

| G&A EXPENSES | March | April | May | June | July |
|---|---|---|---|---|---|
| **Fixed** | | | | | |
| RENT | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 |
| Lease Maintenance | 400 | 400 | 400 | 400 | 400 |
| INSURANCE | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| DATA PROCESSING | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| LICENSES & TAXES | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 |
| LEGAL/PROFESSIONAL FEES | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| TRAVEL | 500 | 500 | 500 | 500 | 500 |
| **Variable** | | | | | |
| Debit Card Administrative Fee | 7,058 | 6,532 | 5,043 | 3,346 | 2,026 |
| UTILITIES | 3,000 | 2,777 | 2,144 | 1,422 | 861 |
| TELEPHONE | 12,172 | 11,266 | 8,697 | 5,771 | 3,494 |
| SUPPLIES | 1,500 | 1,388 | 1,072 | 711 | 431 |
| POSTAGE | 4,266 | 3,948 | 3,048 | 2,023 | 1,225 |
| TRAINING | 1,198 | 1,109 | 856 | 568 | 344 |
| OUTSIDE SERVICES | 10,287 | 9,521 | 7,350 | 4,877 | 2,953 |
| Repossession Expense | 13,483 | 12,479 | 9,634 | 6,393 | 3,870 |
| COLLECTION EXPENSE | 1,602 | 1,483 | 1,145 | 760 | 460 |
| Floor Plan Expense | 2,702 | 2,501 | 1,930 | 1,281 | 776 |
| **TOTAL G&A EXPENSES** | 88,185 | 83,921 | 71,835 | 58,071 | 47,356 |
| | | | | | |
| **Payroll** | | | | | |
| NERFETTIE ELLIS-JORDAN | 5,839 | 5,839 | 5,839 | 5,839 | 5,839 |
| TIUANT BENNETT | 2,961 | 2,961 | 2,961 | 2,961 | 2,961 |
| JAY DEVINE | 2,862 | 2,862 | 2,862 | 2,862 | 2,862 |
| MICHAEL EVANS | 3,975 | 3,975 | 3,975 | 3,975 | 3,975 |
| CHASITIE GAINEY | 3,985 | 3,985 | 3,985 | 3,985 | 3,985 |
| SHANNON MARTINEZ | 3,468 | 3,468 | 3,468 | 3,468 | 3,468 |
| LORENA MOLINA | 3,491 | 3,491 | 3,491 | 3,491 | 3,491 |
| JAIR MORALES SALAZAR | 2,961 | 2,961 | 2,961 | 2,961 | 2,961 |
| DENYS SENICH | 2,455 | 2,455 | 2,455 | 2,455 | 2,455 |
| ANAUSHEYA SMITH | 2,369 | 2,369 | 2,369 | 2,369 | 2,369 |
| ROBIN MILESTONE | 7,745 | 7,745 | 7,745 | 7,745 | 7,745 |
| SHANOVAN REDDICK | 3,575 | 3,575 | 3,575 | 3,575 | |
| ROBERT TROY | 3,662 | 3,662 | 3,662 | 3,662 | |
| STEPHANIE CATE | 7,652 | 7,652 | 7,652 | | |
| DEBORAH DUFFY | 3,532 | 3,532 | 3,532 | | |
| DAVID ALGOOD | 12,027 | 12,027 | 6,000 | 6,000 | |
| BEN COLLISON | 5,134 | | | | |
| CARLA MOREFIELD | 4,051 | 4,051 | 4,051 | 4,051 | |
| ROSE MASSEY | 2,661 | 2,661 | | | |
| RACHEL PILLAR | 5,655 | 5,655 | 5,655 | 5,655 | 5,655 |
| NICOLE GREGORY | 4,083 | 4,083 | 4,083 | 4,083 | |
| ANTHONY IANNACONE | 3,391 | 3,391 | 3,391 | | |
| ERIC COGSWELL | 5,715 | 5,715 | 5,715 | | |

| | | | | | |
|---|---|---|---|---|---|
| ARINDA STOKES | 4,369 | 4,369 | 4,369 | 4,369 | 4,369 |
| MAX ZAKAS | 5,561 | 5,561 | 5,561 | | |
| BRIAN MCSWEENY | 4,806 | 4,806 | 4,806 | 4,806 | 4,806 |
| RUSS ALGOOD | 15,029 | 15,029 | 15,029 | 15,029 | 15,029 |
| WAYNE GARLAND | 9,000 | 4,000 | 4,000 | | |
| ~~Retention Bonus~~ | | 12,896 | 14,687 | 11,433 | 6,011 |
| ~~pay due terminated employees~~ | 46,213 | | | | |
| | 188,227 | 144,776 | 137,878 | 104,773 | 77,981 |
| Total SG&A | 276,412 | 228,697 | 209,714 | 162,844 | 125,337 |

deleted

# Exhibit "B"
## form of Cash Collateral Report

Ace Acceptance Corporation Cash Collateral Report for the week ending:

| Ace Motor Acceptance Corporation Report for Week ending | March 30th | April 7th | April 14th | April 21st |
|---|---|---|---|---|
| Beginning Balance | $ 300,000 | $ 100,000 | $ 100,000 | $ 100,000 |
| Cash Received from all Sources ( Exhibit A) | $ 500,000 | $ 800,000 | $ 1,200,000 | $ 1,400,000 |
| Less last weeks & this weeks ACH out | $ (163,000) $ | - | | |
| Payments to dealers for fees and contracts | $ (100,000) $ | (100,000) $ | (100,000) $ | (100,000) |
| Less Expenses Monthly Accrual ( Exhibit B) | $ (87,500) $ | (81,733) $ | (81,733) $ | (81,733) |
| Less Contingency Hold Back | $ (100,000) $ | (100,000) $ | (100,000) $ | (100,000) |
| Cash Remaining Payable to HSB | $ 349,500 | $ 618,267 | $ 1,018,267 | $ 1,218,267 |
| Balance of funds payable to HSB | $ 349,500 | $ 618,267 | $ 1,018,267 | $ 1,218,267 |
| Balance of Funds in all bank accounts after giving affect to HSB Payment on line 4 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |

With herein referenced Exhibits of even date to this dated certification, I certify that the Expenses Monthly Accrual amount figure above is the monthly cash collateral Total SG&A Expense Budget (Exhibit B) divided by 4 weeks. I also certify that actual expenses paid (Exhibit C) are in compliance with attached Expense Budget (Exhibit B). I certify that the Weekly Cash Reporting (Exhibit A) is correct. I certify the that Borrowing Base Certificate (Exhibit D) is correct.

_____

Russ Algood

_____

Date

### Exhibit A

ACE MOTOR ACCEPTANCE WEEKLY CASH REPORTING FOR WEEK ENDING _____   (Date) _____

| Outstanding Principal (Sales Contracts) | Outstanding Principal (Floorplan) | Carrying Value Inventory |
|---|---|---|
| $           - | $           - | $           - |

*CASH SOURCES*

**Collection Activity (Sales Contracts)**

| Dealer | AMAC Program | Principal | Interest | Fees | Subtotals |
|---|---|---|---|---|---|
|  |  | $           - | $           - | $           - | $           - |
|  |  | $           - | $           - | $           - | $           - |
|  |  | $           - | $           - | $           - | $           - |
| TOTAL |  |  |  |  | $           - |

**Collection Activity (Floorplan)**

| Dealer | VIN | Interest | Fees | Principal Curtailment | Subtotals |
|---|---|---|---|---|---|
|  |  | $           - | $           - | $           - | $           - |
|  |  | $           - | $           - | $           - | $           - |
|  |  | $           - | $           - | $           - | $           - |
| TOTAL |  |  |  |  | $           - |

**Buyback of Sales Contracts**

| Dealer | AMAC Program | Principal amt. repurchased | Repurchase Amt | Buyout Fees Paid | Subtotals |
|---|---|---|---|---|---|
|  |  | $           - | $           - | $           - | $           - |
|  |  | $           - | $           - | $           - | $           - |
|  |  | $           - | $           - | $           - | $           - |
| TOTAL |  |  |  |  | $           - |

**Sale of Inventory on Hand**

| Vehicle VIN | Make | Model | Carrying Value | Sale proceeds |
|---|---|---|---|---|
|  |  |  | $           - | $           - |
|  |  |  | $           - | $           - |
|  |  |  | $           - | $           - |
| TOTAL |  |  |  | $           - |

**Other Sources**

| Source | Amount |
|---|---|
|  | $           - |
|  | $           - |
|  | $           - |
|  | $           - |
|  | $           - |

**CASH RECEIVED FROM ALL SOURCES**                                       | $           - |

Note: Rows to be expanded to reference all existing dealer relationships.  Ace Motor Acceptance Corp should be able to provide contract level detail to HSB upon request.

Exhibit B

Dated 3/22/18

| G&A EXPENSES | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|
| Average Receivables | 28,836,960 | 26,689,403 | 20,503,758 | 13,672,895 | 8,277,703 | 5,440,796 | 3,872,138 |
| | 1 | 0.98 | 0.71 | 0.47 | 0.29 | 0.19 | 0.12 |
| | (0.07) | (0.21) | (0.24) | (0.19) | (0.10) | (0.07) | (0.12) |
| **Fixed** | | | | | | | |
| RENT | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 |
| Lease Maintenance | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| INSURANCE | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| DATA PROCESSING | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| LICENSES & TAXES | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 |
| LEGAL/PROFESSIONAL FEES | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| TRAVEL | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| **Variable** | | | | | | | |
| Debit Card Administrative Fee | 7,058 | 6,532 | 5,043 | 3,846 | 2,028 | 1,532 | 825 |
| UTILITIES | 3,000 | 2,777 | 2,144 | 1,422 | 861 | 586 | 551 |
| TELEPHONE | 12,172 | 11,266 | 8,697 | 5,771 | 3,494 | 2,297 | 1,423 |
| SUPPLIES | 1,500 | 1,389 | 1,072 | 711 | 431 | 283 | 175 |
| POSTAGE | 4,266 | 3,948 | 3,048 | 2,023 | 1,225 | 805 | 499 |
| TRAINING | 1,186 | 1,109 | 856 | 568 | 344 | 226 | 140 |
| OUTSIDE SERVICES | 10,287 | 9,521 | 7,350 | 4,877 | 2,953 | 1,941 | 1,203 |
| Repossession Expense | 18,483 | 12,479 | 9,634 | 6,393 | 3,870 | 2,344 | 1,577 |
| COLLECTION EXPENSE | 1,602 | 1,483 | 1,145 | 760 | 460 | 302 | 187 |
| Floor Plan Expense | 2,702 | 2,501 | 1,930 | 1,281 | 778 | 510 | 316 |
| **TOTAL G&A EXPENSES** | 88,185 | 83,921 | 71,815 | 58,071 | 47,356 | 41,722 | 37,614 |
| **Payroll** | | | | | | | |
| NERFETTIE ELLIS-JORDAN | 5,839 | 5,839 | 5,839 | 5,839 | 5,839 | 5,839 | 5,839 |
| TRUANT BENNETT | 2,961 | 2,961 | 2,961 | 2,961 | 2,961 | 2,961 | 2,961 |
| JAY DEVINE | 2,862 | 2,862 | 2,862 | 2,862 | 2,862 | 2,862 | 2,862 |
| MICHAEL EVANS | 3,975 | 3,975 | 3,975 | 3,975 | 3,975 | 3,975 | 3,975 |
| CHASITIE GAINEY | 3,985 | 3,985 | 3,985 | 3,985 | 3,985 | 3,985 | 3,985 |
| SHANNON MARTINEZ | 3,468 | 3,468 | 3,468 | 3,468 | 3,468 | | |
| LORENA MOLINA | 3,491 | 3,491 | 3,491 | 3,491 | 3,468 | | |
| JAIR MORALES SALAZAR | 2,961 | 2,961 | 2,961 | 2,961 | 3,491 | | |
| DENYS SENICH | 2,455 | 2,455 | 2,455 | 2,455 | 2,961 | | |
| ANAUSHEYA SMITH | 2,369 | 2,369 | 2,369 | 2,455 | | | |
| ROBIN MILESTONE | 7,745 | 7,745 | 7,745 | 2,369 | | | |
| SHANOVAN REDDICK | 3,575 | 3,575 | 3,575 | 7,745 | 7,745 | 7,745 | 7,745 |
| ROBERT TROY | 3,662 | 3,662 | 3,662 | 3,575 | | | |
| STEPHANIE CATE | 7,652 | 7,652 | 7,652 | 3,662 | | | |
| DEBORAH DUFFY | 3,532 | 3,532 | 3,532 | | | | |
| DAVID ALGOOD | 12,027 | 12,027 | 6,000 | 6,000 | | | |
| BEN COLLISON | 5,734 | | | | | | |
| CARLA MOREFIELD | 4,051 | 4,051 | 4,051 | 4,051 | | | |
| ROSE MASSEY | 2,661 | 2,661 | | | | | |
| RACHEL PILLAR | 5,655 | 5,655 | 5,655 | 5,655 | 5,655 | 5,655 | 5,655 |
| NICOLE GREGORY | 4,083 | 4,083 | 4,083 | 4,083 | | | |
| ANTHONY IANNACONE | 3,391 | 3,391 | 3,391 | | | | |
| ERIC COGSWELL | 5,715 | 5,715 | 5,715 | | | | |
| ARINDA STOKES | 4,369 | 4,369 | 4,369 | 4,369 | 4,369 | 4,369 | 4,369 |
| MAX ZAKAS | 5,561 | 5,561 | 5,561 | | | | |
| BRIAN MCSWEENY | 4,806 | 4,806 | 4,806 | 4,806 | 4,806 | 4,806 | 4,806 |
| RUSS ALGOOD | 15,029 | 15,029 | 15,029 | 15,029 | 15,029 | 15,029 | 15,029 |
| WAYNE GARLAND | 9,000 | 9,000 | 4,000 | | | | |
| Retention Bonus | | 12,896 | 14,687 | 11,433 | 6,011 | 4,384 | 11,695 |
| pay due terminated employees | 46,215 | | | | | | |
| | 188,227 | 144,776 | 137,878 | 104,773 | 77,981 | 51,809 | 68,920 |
| **Total SG&A** | 276,412 | 228,697 | 209,714 | 162,844 | 125,337 | 103,331 | 106,533 |

Weekly

March — $69,103

April — $57,174

May — $52,425

June — $40,711

Divide monthly by 4 to determine weekly

EXHIBIT C

GL PRINT OUT OR SOME VERSION OF LIST OF EXPENSES ACTUALLY PAID
FOR THE WEEK

Date: _____

Reporting
Date: _____

**EXHIBIT D**
**BORROWING BASE CERTIFICATE**

**ACE MOTOR ACCEPTANCE, INC.**
**LOAN# 827473**

1  Finance Contracts (net of U/E, BK, Repo,etc) pledged at previous report date:       1                    $            -

2  Finance Contracts (net of U/E, BK, Repo,etc) pledged at this report:                    2  $            -

3  Gain or Reduction for Month                                                                              3  $            -

4  Ineligible Accounts as of this report date:
   a.  Payments 61 days or more past due                         $            -
   b.  Other Ineligibles                                         $            -
                                               Total ineligible (a. & b.)              4  $            -

5  Eligible collateral (auto sales contracts)                    [Line 2 minus 4 ]     5  $            -

6  40% of Line 5 (NET) eligible auto contracts                          6              $            -

7  Floorplan Receivable at report date :                                 7  $            -

8  Ineligible Floorplan Receivable at report date:
   a.  Past due 120 days                                         $            -
   b.  Other ineligible                                          $            -
                                               Total ineligible (a. & b.)              8  $            -

9  Eligible collateral (Inventory)                               [Line 7 minus Line 8]  9  $            -

10  40% of Line 9 (NET) eligible Floorplan Receivable                         10        $            -

11  Net Eligible Collateral Borrowing Base                       [Line 6 plus Line10]   11  $            -

12  Facility balance-PRIOR MONTH                                 $            -
    Plus - advances since last report                            $            -
    Less - Principal payments since last report                  $            -
                                               Total facility balance this report       12  $            -     (Limit-$14,500,000.00)

13                                             **SURPLUS Available**                     13  $            -
                                               [ Line 11 less Line 12 ]

The undersigned Borrower (the "Borrower") hereby transfers, assigns, represents, warrants, certifies and agrees as follows: (i) that the Borrower has fully transferred and assigned, and does hereby fully transfer and assign, to Hamilton State Bank (the "Bank") the Motor Vehicle Retail Installment Contracts listed, described or otherwise referred to in Schedule 1 attached hereto and incorporated herein by this reference, and all receivables, contract documents and other documents related thereto; (ii) that the warranties and representations contained in that certain Loan Agreement between the Borrower and Bank (the "Loan Agreement"), and those set forth in that certain Security Agreement between Bank and Borrower are true and correct; (iii) that no Event of Default has occurred under the Loan Agreement or Security Agreement (other than Events of Default, if any, that have previously been brought to the attention of the Bank and then cured to the satisfaction of the Bank); (iv) that all the receivables, loan documents and other documents related to the Motor Vehicle Retail Installment Contract items on Schedule 1 hereto have been delivered to the Bank, or to the Bank's Custodian(s) as agent(s) and bailee(s) for the Bank pursuant to its Custodian Agreement(s) with the said custodian(s); (v) that the Borrower has herein or previously transferred, assigned and delivered to the Bank all of the Motor Vehicle Retail Installment Contracts and related contract documents that it currently owns, including those (if any) which are ineligible for inclusion in the borrowing base pursuant to the terms of the Loan Agreement; and (vi) that the information set forth in this Report is true and correct and accurately reflects the status of the various Motor Vehicle Retail Installment Contracts. (The foregoing warranties do not supersede the continuing warranties and representations of the Borrower set forth in the Loan Agreement, Security Agreement or other loan documents.)

By: _____
     **Russ Algood, CEO**

111 Cupped Oak Dr., Suite F
Matthews, NC 28104