FILED & JUDGMENT ENTERED
Steven T. Salata

April 30 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | CASE NO. 18-30426 |
| ACE MOTOR ACCEPTANCE | ) | |
| CORPORATION | ) | CHAPTER 11 |
| | ) | |
| Debtor    . | ) | |
| | ) | |

## FINAL CONSENT ORDER (I) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SETTING DEADLINE TO OBJECT TO LENDER'S CLAIM

Before the Court is the *Emergency Motion of the Debtor For Order Authorizing The Use of Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code; Motion for Hearing on Shortened Notice* (the **"Motion"**) [Docket No. 16] filed by debtor ACE Motor Acceptance Corporation (the **"Debtor"**). A final hearing on the Motion was held by the Court on April 24, 2018 (the **"Final Hearing"**). Having reviewed and considered the

Final CC Order v3

record, and it appearing to the Court that the Debtor, the Lender (as defined herein) and the Junior Creditors (as defined herein) stipulate and consent to the findings of fact and the terms of relief granted in this Final Order, the Court HEREBY FINDS AS FOLLOWS:

A.    On March 15, 2018 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"). The Debtor continues in possession of its property and operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.    The Debtor provides financing for automobile dealerships, including for  dealerships that are described or referred to as "Buy Here, Pay Here" automobile dealerships.

D.    The Debtor is indebted to Hamilton State Bank, a Georgia banking corporation ("**Lender**") under a revolving line of credit loan for up to $16 million (the "**Loan**") that is evidenced by, among other instruments, that certain Loan Agreement dated November 1, 2016, between the Debtor and Lender (as modified and amended from time to time, and together with the other documents

2

Final CC Order v3

that evidence, secure, guaranty or relate to the Loan, the "**Loan Documents**").

       E.   Lender has filed a proof of claim (claim register #4, the "**Lender Claim**") and contends that the outstanding principal balance of the indebtedness owed under the Loan Documents as of the Petition Date is approximately $10,416,450.75 not including Lender's claims for interest, charges, fees (including attorney's fees), expenses, penalties or other possible amounts (the "**Senior Debt**"), and that the Senior Debt is secured by a first priority lien and security interest granted to Lender upon substantially all of the assets of the Debtor, including (i) all of the Debtor's accounts and accounts receivable, (ii) all of the Debtor's chattel paper, (iii) all of the Debtor's contract rights and general intangibles, including trademarks and deposit accounts, (iv) all of the Debtor's books and records, including customer lists, (v) all of the Debtor's furniture, fixtures and equipment, (vi) substantially all of the Debtor's inventory and substantially all other tangible personal property of the Debtor, (vii) all monies of the Debtor on deposit with Lender as of the Petition Date, and (vii) all licenses and authorizations issued to the Debtor (collectively, and as further defined in the Loan Documents, the "**Pre-Petition Collateral**").

Final CC Order v3

F.    The Debtor alleges that it has separately granted security interests or liens in some or all of the Pre-Petition Collateral to the following related persons or entities (collectively, the **"Junior Creditors"**): John G. Algood Living Trust; Russell E. Algood Revocable Trust; Steven A. Cook; Malvin Algood; Jeffrey Algood; Polly Williams; Stuart Algood; Shirley Cook; Don Brown; and The Malvin L. Algood Living Trust.    The liens and security interests in the Pre-Petition Collateral were allegedly granted to the Junior Creditors (the **"Junior Liens"**) to secure certain loan(s) extended by one or more of the Junior Creditors to the Debtor (the **"Junior Debt"**), and the Junior Liens are alleged to be junior and/or subordinate to the Lender's security interests and liens in the Pre-Petition Collateral.    As of the Petition Date, the principal amount of the Junior Debt allegedly equals approximately $7,000,000.00.

G.    For purposes of this Final Order, the monies and income derived from the Pre-Petition Collateral constitute "cash collateral" of the Lender and Junior Creditors within the meaning of 11 U.S.C. §§ 363(a) and 363(c)(2), and such monies are referred to herein as **"Cash Collateral".**

H.    The Debtor requires the use of certain Cash Collateral to adequately maintain or operate its business, and serious harm to the Debtor and the Debtor's estate may occur absent the Debtor's use of the Cash Collateral.

4

Final CC Order v3

I.    The Court held an interim hearing on the Motion on March 29, 2018, and entered an interim order [Dkt. No. 32, the **"Interim Order"**] that, among other items, (i) granted the Debtor authorization to use Cash Collateral on an interim basis, and (ii) scheduled the Final Hearing to consider entry of an order granting the Motion on a final basis.

J.    The Debtor has filed certificates of service with the Court [see Dkt. Nos. 36 and 37] stating that the Interim Order, which includes notice of the Final Hearing, has been served upon the creditor matrix for the Debtor's case and other possible parties in interest.

K.    As evidenced by the signatures of the parties or their counsel below, the Debtor and the Lender consent to the entry of this Final Order.

L.    The individual signing this Order on behalf of the Junior Creditors stipulates as follows: (i) he is the CEO of the Debtor, (ii) he is one of the Junior Creditors and is reflected as such in the Schedules filed by the Debtor, (iii) the Junior Creditors have received notice of the Motion and the relief set forth in this Final Order, and (iv) there is no known opposition to this Final Order by any of the Junior Creditors.

M.    As reflected by the certificate(s) of service filed by the Debtor with the Court, and in accordance with Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy

5

Final CC Order v3

Rules, adequate notice under the circumstances of the Motion and the Final Hearing has been provided by the Debtor to all parties required or entitled to receive notice, including to (i) the Bankruptcy Administrator, (ii) the Lender, (iii) the Junior Creditors or their authorized representative, (iv) the Debtor's 20 largest creditors, (v) the IRS, and (vi) any other parties that are known to assert an interest in the Cash Collateral. The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and the notice given by the Debtor complies with Bankruptcy Rules 2002 and 4001.

N.    Good and sufficient cause exists for granting the relief set forth herein.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.    <u>Motion Granted</u>.   The Motion is GRANTED on a final basis according to the terms and provisions of this Final Order. Any and all objections to the relief requested in the Motion, to the extent not otherwise withdrawn, waived, or resolved by this Final Order, are hereby overruled and denied.

2.    <u>Authorization To Use Cash Collateral</u>.    Unless and until a Termination Event (as defined in Section 11 below) occurs, the Debtor is authorized to use Cash Collateral to pay (a) the Chapter 11 fees owed in this case by the Debtor pursuant to 28 U.S.C. § 1930 or otherwise, provided that such fees shall

6

be paid first from any other income and monies of the Debtor's estate that do not constitute Cash Collateral of the Lender, and (b) the monthly expenses items in the budget attached hereto as Exhibit "A" (as may be supplemented in accordance with Section 2(a) below, the "**Budget**") that are actually incurred by the Debtor in the ordinary course of its business and that are not prohibited by any provision of this Final Order (the "**Authorized Expense Payments**").    Such payments by the Debtor shall not exceed the amounts listed in the Budget by more than five percent (5%) with respect to any single line item or by more than ten percent (10%) with respect to all line items in the aggregate, unless the Debtor first receives Lender's written consent.    Unless and until Lender acknowledges in writing that the Senior Debt owed to Lender has been paid and satisfied in full, no Cash Collateral shall be paid by the Debtor to the Junior Creditors or to any other party with respect to any indebtedness secured by the Junior Liens.    No Cash Collateral shall be used pursuant to the Budget to pay any pre-petition claim against the Debtor other than (x) amounts specifically approved by the Court, including payroll, and (y) payments made to the Lender for application to the Senior Debt as provided in Section 6(b) of this Final Order.    Notwithstanding anything to the possible contrary in the Budget or otherwise, no Cash Collateral or other monies of the Debtor's estate shall be paid

7

(i) for purposes of providing any "retention bonuses" to any employees of the Debtor, or (ii) for purposes of paying compensation, benefits or other amounts that may be owed to any terminated or former employees of the Debtor; provided, however, this Final Order shall not prejudice the Debtor from filing a separate motion to seek payment of such items.

a) <u>Supplemental Budget</u>. No later than ten (10) business days prior to the last day covered by the then applicable Budget, the Debtor shall deliver to Lender, with a copy to the Junior Creditors' authorized representative and to the Office of the Bankruptcy Administrator, a proposed budget that covers the subsequent three (3) month period and that shall be in substantially the same format as the preceding Budget. Unless the Lender provides written notice to the Debtor that the proposed budget is unacceptable, the proposed budget shall become the "Budget" for purposes hereof and for the time period covered thereby. In the event of any dispute regarding the proposed new budget, the Debtor may seek the Court's adjudication of such dispute on an expedited basis. In the event Lender notifies Debtor in writing that the Lender Claim has been paid and discharged in full, then thereafter the Debtor need not submit any further budgets to the Lender, and the Debtor may use Cash Collateral of the

8

Junior Creditors in accordance with the Budget that is so approved by such Junior Creditors.

3.    <u>DIP Account(s)</u>. All Cash Collateral received by the Debtor shall be deposited into one or more debtor-in-possession bank accounts at financial institutions that are FDIC-insured (the **"DIP Account(s)"**) and shall be segregated from any other monies received by the Debtor that do not constitute Cash Collateral of Lender, or at a minimum, such Cash Collateral shall be accounted for on Debtor's books and records such that the Cash Collateral of Lender is clearly and separately identifiable from any other monies that may be commingled with the Cash Collateral, and in the event of such commingling, the Debtor shall be deemed to have disbursed the non-Cash Collateral funds on a first-out basis prior to disbursing the Cash Collateral of Lender.   All disbursements from the DIP Accounts shall be accounted for in the monthly debtor-in-possession operating reports to be filed by the Debtor with the Court.

4.    <u>Funds In Accounts with Lender</u>.  So long as a Termination Event shall not have occurred, the Debtor shall be entitled to access and utilize Cash Collateral that may be on deposit, either now or in future, in the bank accounts that the Debtor established pre-petition with Lender (the **"Lender Deposit Accounts"**), and Lender shall allow Debtor to transfer Cash Collateral that may be located in such Lender Deposit Accounts

9

Final CC Order v3

in accordance with the normal practices that were followed by the parties prior to the Petition Date, subject to normal fees and charges that the Lender customarily charges for the use of such accounts.

5.    <u>New Financing</u>.    The Debtor may use up to a maximum $300,000.00 of Cash Collateral of the Lender, or such additional amounts as Lender may expressly consent to in writing, to make or purchase new vehicle loans in the ordinary course of the Debtor's business, but only if such loans would constitute an eligible receivable under the "Borrowing Base" formula set forth in the Loan Documents with Lender.

6.    <u>Lender Adequate Protection</u>.    For purposes of providing adequate protection to the Lender for the Debtor's use of Cash Collateral, the following items shall be provided to Lender or, as applicable, undertaken by Debtor.

a)    <u>Lender Replacement Liens</u>. Without limiting any security interests or liens that are granted or extended to Lender pursuant to 11 U.S.C. § 552(b), Lender was granted in the Interim Order, and is hereby granted in this Final Order, a security interest in all of the Debtor's post-petition property and assets that are of the same type and kind as described in the Loan Documents (the **"Post-Petition Collateral"** and together with the Pre-Petition Collateral, the **"Lender Collateral"**), including without limitation, all

Final CC Order v3

of the Debtor's post-petition accounts receivables and chattel paper, and all proceeds therefrom (the "**Lender Replacement Liens**").    Notwithstanding anything to the contrary, the Lender Replacement Liens shall <u>not</u> extend to the proceeds received by Debtor or the Debtor's estate pursuant to any avoidance actions arising under Sections 544, 547, 548, 549, 550 or 553 of the Bankruptcy Code.    The Lender Replacement Liens shall secure repayment of the Senior Debt owed to Lender but in an amount equal to the diminution in value of the Lender's interest in the Pre-Petition Collateral resulting from (i) the Debtor's use of Cash Collateral, or (ii) the imposition of the automatic stay and the Debtor's use, sale, consumption or disposition of such Pre-Petition Collateral.    The Lender Replacement Liens shall have the same validity and priority as Lender's security interests and liens in the Pre-Petition Collateral as of the Petition Date, and they shall be deemed automatically valid and perfected from the date of entry of the Interim Order without further filing or recordation by Lender or the Debtor.

b)    <u>Cash Payments</u>.    On a weekly basis, the Debtor shall pay to Lender a sum equal to the amount of cash received by Debtor from collections (or that otherwise come

11

into Debtor's control or possession) that is in excess of the Authorized Expenses Payments allocated for payment that week in the Budget (the "**Excess Cash Payments**"). Such Excess Cash Payments shall be made to Lender by 1:00 pm on the Friday of each consecutive week following the entry of this Final Order. Lender shall be entitled to apply the Excess Cash Payments to the outstanding Senior Debt until such indebtedness and obligations are paid and discharged in full. To the extent there is any dispute regarding Lender's application of such cash proceeds, such dispute is reserved for future adjudication by this Court.

c) <u>Financial Reports</u>. On a weekly basis, the Debtor shall provide cash flow reports to Lender in substantially the same form as those attached to the Interim Order (the "**Cash Collateral Reports**") unless a different form of reporting is agreed to by Lender in writing. Such weekly Cash Collateral Reports shall be due at the same time that the weekly Excess Cash Payments are due to Lender.

d) <u>Insurance</u>. The Debtor shall obtain or maintain insurance for the Lender Collateral to the extent such insurance is required under the terms and provisions of the Loan Documents (if at all), and upon request the Debtor

12

shall provide proof of any such required insurance to Lender.

e) <u>Proof of Incurred Expenses</u>. Upon request by Lender, the Debtor shall provide copies of any invoices or other documents to substantiate any Authorized Expense Payments made by the Debtor.

f) <u>Inspection Access</u>. Lender and its respective representatives and agents shall be authorized, during normal business hours, to audit, inspect or examine the Lender Collateral or the Debtor's books and records; provided, however, that the Debtor and Debtor's counsel must be provided with at least two (2) days prior notice of the intent of Lender or any such representative to do so. The Debtor shall cooperate in providing Lender with information or copies of documents reasonably requested by Lender with respect to the Lender Collateral, including copies of dealer agreements or other documents pertaining to the Debtor's receivables and chattel paper.

7. <u>Superpriority Claim</u>. To the extent the Lender Replacement Liens do not provide Lender with adequate protection of its interests in the Pre-Petition Collateral, then Lender shall be entitled to a super-priority administrative expense

13

claim under Section 507(b) of the Bankruptcy Code as necessary to fully compensate Lender for the use of its Cash Collateral by the Debtor.

8.   <u>Deadline to Object to Lender's Claim</u>.   Any challenges or objections (collectively, a "**Challenge**") by any parties to the Lender's claim (the "**Lender Claim**") including (a) any objection to the amount, validity, perfection, enforceability, priority, or extent of the Senior Debt or any security interests relating thereto, or (b) any defense, claim, cause of action, or offset against Lender relating to any actions or failure to act with respect to the Lender's Loan Documents, shall be made by initiating an appropriate contested matter or adversary proceeding that is timely filed no later than 150 days after the Petition Date in the Debtor's case (the "**Objection Deadline**").   In the event a Challenge is not timely filed by the Objection Deadline, then the amount of the debt set forth in the Lender Claim shall be deemed to constitute a fully secured, allowed claim that is not subject to defense, counterclaim, setoff, recharacterization or subordination; <u>provided</u>, <u>however</u>, the Debtor and all other parties shall retain the limited right to object to the reasonableness of any post-petition fees and charges (including attorney's fees) that are not quantified in the Lender Claim at the time it is filed with

14

the Court and that are incurred or quantified by Lender after the Lender Claim is filed.

a)    In the event a Challenge to the Lender Claim is filed by the Objection Deadline, (i) nothing in this Final Order shall waive any defenses Lender may assert to such Challenge, including defenses related to the standing of the party asserting the Challenge, and (ii) Lender may amend the Lender Claim (either before or after any asserted payoff of such claim) to add a reserve for the legal fees and expenses that Lender reasonably estimates shall be incurred with respect to the Challenge and that comprise part of Lender's asserted secured claim pursuant 11 U.S.C. §506(b) or otherwise.

9.    <u>Cash Collateral Subject to Liens</u>. Until expended by the Debtor, all Cash Collateral shall remain subject to the asserted liens and claims of Lender and the Junior Creditors under their respective loan documents and this Final Order.

10.    <u>Modification of Automatic Stay</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby modified and lifted to the extent necessary to implement the provisions of this Final Order and permit Lender to apply payments received from the Debtor to the Senior Debt and, if deemed desirable by Lender, to file or record any instruments to

Final CC Order v3

evidence, validate, or perfect the Lender Replacement Liens or other adequate protection granted by this Final Order to Lender.

11. <u>Termination of Cash Collateral Usage</u>. The Debtor's authorization to use Cash Collateral shall terminate immediately upon the occurrence of any one or more of the following events (each a **"Termination Event"**): (i) the conversion or dismissal of the Debtor's chapter 11 case; (ii) failure by the Debtor to pay or provide to Lender the Excess Cash Payments and Cash Flow Reports that are required pursuant to this Final Order if not cured within three (3) days after delivery by Lender to Debtor (and copy by email and regular mail to Debtor's counsel) of written notice of such default; (iii) the entry of an Order by the Court granting relief from the automatic stay to Lender to foreclose upon the Lender Collateral; (iv) the entry of an Order appointing a Chapter 11 Trustee for the Debtor or authorizing the sale of substantially all of the assets of the Debtor; (v) the Debtor's breach of any other obligations imposed by the terms and provisions of this Final Order if not cured within ten (10) days after delivery to Debtor (and copy by email and regular mail to Debtor's counsel) of written notice of such default; or (vi) this Final Order is amended, vacated, stayed, or reversed without the prior written consent of Lender.  Upon the occurrence of a default by the Debtor with respect to its obligations to pay or provide the

16

Excess Cash Payments and Cash Flow Report, Lender may temporarily freeze all Lender Deposit Accounts with the Debtor until such time as the default is timely cured or until the Court rules on any emergency motion for stay relief that is promptly filed by Lender after such default.

12. <u>Survival of Provisions of This Order</u>. The provisions of this Final Order and any action taken pursuant to the terms hereof shall survive the entry of any order that may be entered dismissing this case or converting the case to Chapter 7 of the Bankruptcy Code, and the liens granted pursuant to this Final Order shall continue and shall retain their priority in this case or in any superseding case under the Bankruptcy Code.

13. <u>Order Immediately Effective</u>. Notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise, the effectiveness of this Final Order shall not be stayed, and this Final Order shall be immediately effective upon its entry

14. <u>Reservation of Rights</u>.  This Final Order shall not be construed as an adjudication by the Court respecting the nature, amount, validity, priority or perfection of any pre-petition liens or security interests asserted against the Debtor or the Debtor's property.  Furthermore, this Final Order shall not be construed as a waiver by the  Debtor, the Lender, or the

17

Junior Creditors of any rights, claims, defenses, or objections they may have (a) respecting any requests for relief from the automatic stay under 11 U.S.C. § 362(d), (b) respecting demands for further adequate protection in addition to those provided by this Final Order, (c) respecting any future requests by either party to modify the terms of this Final Order, (d) respecting any claims or assertions regarding diminution in value of the collateral securing the Senior Debt or the Junior Debt, or (e) respecting any other forms of relief that Lender may seek in the Debtor's case, including seeking the appointment of a trustee or emergency motions to terminate the use of Cash Collateral.

15. <u>Service of Final Order</u>. Promptly after the entry of this Final Order, Debtor's counsel shall serve a copy of this Order upon the creditor matrix and all known parties in interest, and Debtor's counsel shall file a certificate of

18

Final CC Order v3

service with the Court.   Such service shall constitute adequate

notice of the Objection Deadline pertaining to the Lender Claim.

| **DEBTOR** | **LENDER** |
|---|---|
| Consented To: | Consented To: |
| | |
| /s/James H. Henderson | /s/ Kiah T. Ford IV, Esq. |
| James H. Henderson | Ashley A. Edwards, Esq. (N.C. |
| State Bar No. 13536 | Bar No. 40695) |
| THE HENDERSON LAW FIRM | Kiah T. Ford IV, Esq. (N.C. Bar |
| 1201 Harding Place | No. 20979) |
| Charlotte NC 28204-2826 | PARKER POE ADAMS & BERNSTEIN LLP |
| Telephone:     704.333.3444 | Three Wells Fargo Center |
| Facsimile:     704.333.5003 | 401 S. Tryon Street, Suite 3000 |
| Email: | Charlotte, NC  28202 |
| henderson@title11.com | Tel: (704) 335-9534 |
| *Proposed Counsel for Debtor ACE* | Fax: (704) 334-4706 |
| *Motor Acceptance Corporation* | |
| | -- and -- |
| /s/ Russell Algood | |
| **JUNIOR CREDITORS** | Brad Baldwin |
| No Opposition: | Georgia Bar No. 034220 |
| | Hecht Walker, P.C. |
| | 205 Corporate Center Drive, |
| /s/ Russell Algood | Suite B |
| Russell Algood | Stockbridge, GA 30281 |
| | (404) 348-4881 |
| | |
| *Informal Representative for* | *Counsel for Hamilton State Bank* |
| *the Junior Creditors signing* | |
| *pursuant* | |
| *to Section L hereof* | |

This order has been signed     United States Bankruptcy Court
electronically.  The Judge's
signature and court's seal
appear at the top of the Order.

Final CC Order v3

# Exhibit "A"
## Budget

Final CC Order v3

| G&A EXPENSES | March | April | May | June | July | August | September |
|---|---|---|---|---|---|---|---|
| **Fixed** | | | | | | | |
| RENT | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 |
| Lease Maintenance | 600 | 600 | 600 | 600 | 600 | 600 | 600 |
| INSURANCE | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| DATA PROCESSING | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| LICENSES & TAXES | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 |
| LEGAL/PROFESSIONAL FEES | 5,000 | 10,950 | 16,900 | 5,000 | 5,000 | 5,000 | 5,000 |
| TRAVEL | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| **Variable** | | | | | | | |
| Debit Card Administrative Fee | 7,058 | 6,372 | 5,943 | 5,189 | 4,546 | 3,872 | 3,314 |
| UTILITIES | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| TELEPHONE | 12,172 | 10,989 | 10,249 | 8,949 | 7,840 | 6,678 | 5,716 |
| SUPPLIES | 1,500 | 1,354 | 1,263 | 1,103 | 966 | 823 | 704 |
| POSTAGE | 4,266 | 3,851 | 3,592 | 3,137 | 2,748 | 2,340 | 2,003 |
| TRAINING | 1,198 | 1,082 | 1,009 | 881 | 772 | 657 | 563 |
| OUTSIDE SERVICES | 10,287 | 10,287 | 8,661 | 7,563 | 6,626 | 5,643 | 4,831 |
| Repossession Expense | 13,483 | 13,483 | 13,483 | 13,483 | 13,483 | 13,483 | 13,483 |
| COLLECTION EXPENSE | 1,602 | 1,447 | 1,349 | 1,178 | 1,032 | 879 | 753 |
| Accounting Consultant | 3,000 | 2,000 | 1,000 | - | - | - | - |
| Floor Plan Expense | 2,702 | 2,439 | 2,275 | 1,986 | 1,740 | 1,482 | 1,269 |
| **TOTAL G&A EXPENSES** | 92,385 | 94,370 | 95,841 | 78,587 | 74,869 | 70,975 | 67,753 |
| | | | | | | | |
| **Payroll** | | | | | | | |
| Total Collection Payroll | 48,625 | 48,625 | 45,157 | 42,788 | 36,758 | 33,797 | 30,306 |
| Total Titles and admin | 17,897 | 14,864 | 11,712 | 9,051 | 9,051 | 9,051 | 9,051 |
| Total I.T. | 10,461 | 10,461 | 10,461 | 10,461 | 10,461 | 10,461 | 10,461 |
| Total Accounting and Audit | 23,213 | 23,213 | 23,213 | 23,213 | 23,213 | 14,107 | 14,107 |
| Total Sr Mangangement | 41,190 | 26,279 | 20,279 | 15,029 | 15,029 | 15,029 | 15,029 |
| Total Payroll | 141,385 | 123,442 | 110,822 | 100,541 | 94,511 | 82,444 | 78,953 |
| Total SG&A | 233,770 | 217,811 | 206,663 | 179,128 | 169,380 | 153,419 | 146,706 |
| Weekly Cash Budget | 58,442 | 54,453 | 51,666 | 44,782 | 42,345 | 38,355 | 36,676 |