IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **ACE MOTOR ACCEPTANCE CORPORATION,** | ) ) | Case No. 18-30426 |
| | ) | |
| Debtor. | ) | |

## OBJECTION TO CLAIM OF EVELYN SPRYE

The Russell Edward Algood Revocable Trust Dated May 15, 2013, the Janet G. Algood Living Trust, the John G. Algood Living Trust, and the Malvin L. Algood Living Trust (collectively, the "Movants") hereby object to Claim 21-1 of Evelyn Sprye ("Claim 21"), and seek the entry of an order disallowing and expunging Claim 21. In support of this Objection, the Movants respectfully state as follows:

### JURISDICTION

1. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

3. Venue is appropriate in this district pursuant to 28 U.S.C. § 1409.

4. The authority for the relief sought herein is section 502 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, and Rule 3007 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND

5. The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court on March 15, 2018 (the "Petition Date"). The Debtor continues in possession of its

MWH: 10412.001; 00020642.4

properties and the management of its business as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Court has not appointed a trustee or examiner in this case.

6. The Movants each timely filed proofs of claim in this case asserting secured claims against the Debtor's estate. [*See* Claims 25-1, 26-1, 28-1, & 29-1].

*Evelyn Sprye's Claim*

7. On May 23, 2018, Evelyn Sprye (the "Representative") filed Claim 21. The Representative asserts a $36,000,000.00 unsecured claim against the Debtor's estate. Claim 21 purportedly arises from the Debtor's alleged pre-petition violations of the Telephone Consumer Protection Act (the "TCPA"), the Maryland Telephone Consumer Protection Act (the "MDTCPA"), and the Maryland Wiretapping Act (the "Wiretap Act").

8. The Representative alleges that one of her relatives listed her as a reference on a loan application submitted to the Debtor. [Claim 21-1, Part 3 ¶ 31 & Part 4 ¶ 35]. The Representative further alleges that she never signed any paperwork provided by the Debtor. *Id*.

9. The Representative claims the Debtor violated the TCPA and MDTCPA by making twelve non-emergency telephone calls to her cellular telephone using an automatic telephone dialing system. [Claim 21-1, Part 2 at 2]. The Representative asserts a claim on her own behalf in the amount of $25,000.00 for these twelve calls. [Claim 21-1, Part 2 at 2; *see also* Part 3 ¶ 32 & Part 4 ¶ 35].

10. The Representative also asserts Claim 21 on behalf of three classes of claimants that are allegedly similarly situated. The Representative identifies those classes as consisting of:

Class 1 (TCPA Class)

All persons within the United States who, within four years preceding July 22, 2016 received a non-emergency telephone call

>   from Debtor to a cellular telephone through the use of an automatic telephone dialing system.
>
>   <u>Class 1 Subclass (MDTCPA Subclass)</u>
>
>   All persons within the State of Maryland who, within the three years preceding July 22, 2016 received a non-emergency telephone call from Debtor to a cellular telephone through the use of an automatic telephone dialing system.
>
>   <u>Class 2</u>
>
>   All persons within the State of Maryland who, within the three years preceding July 22, 2016 received a telephone call from Ace's collections department that was recorded by Ace.

[Claim 21-1, Part 2 at 1-2].

11.  The Representative seeks damages for members of the TCPA Class of up to $1,500 for each and every call that violated the TCPA. [Claim 21-1, Part 2 at 2]. She further seeks damages of $500 for each and every call that violated the MDTCPA for all members of the MDTCP Subclass and damages of $1,000 for violations of the Wiretap Act for each member of Class 2. *Id*.

12.  In addition to seeking statutory fees pursuant to the TCPA, the MDTCPA, and the Wiretap Act, the Representative also claims costs and attorneys' fees on her own behalf and on behalf of the various class claimants.[1] *Id*.

13.  The Representative estimates that the TCPA Class contains at least 50,000 members and that Class 2 contains at least 10,000 members. *Id*. The Representative admits that she does "not know the exact number" of the members of each class and provides no evidence to support her estimation of the number of members in each class or her calculation of their damages. *Id*.

---

[1] The Representative alleges these costs and attorney's fees should be allowed as an administrative priority claim pursuant to 11 U.S.C. § 503. However, the Representative cites no subsection of section 503 that would support the elevation of these fees and costs to administrative claim status, nor can the Movants identify any basis for awarding them such priority.

*The Prior Class Action Litigation*

14. Prior to the Debtor's bankruptcy filing, Jamal Sprye ("Mr. Sprye"), a relative of Evelyn Sprye, filed a class action suit against the Debtor on July 22, 2016 in the Circuit Court for Montgomery County, Maryland (the "State Court"), bearing case number 423332V (the "Class Action"), seeking damages for the same alleged actions giving rise to Claim 21. That case was subsequently removed to the United States District Court for the District of Maryland (Case No. 8:16-cv-03064) (the "District Court Litigation," and with the Class Action, the "Lawsuits").

15. Interestingly, the complaint in the Class Action estimated the number of putative claimants as a "number in the hundreds or thousands." [Claim 21-2, Part 3 ¶ 48 & Part 4 ¶ 53].[2]

16. The District Court remanded the issues arising under the Wiretap Act to the State Court. The State Court subsequently dismissed the action for failure to state a claim upon which relief could be granted, holding that the Wiretap Act did not "proscribe the interception of telephone calls when it is done out-of-state." *Sprye v. Ace Motor Acceptance Corp.*, No. 423332-V, 2017 Md. Cir. Ct. LEXIS 7, at *10 (Md. Cir. Ct. Sept. 29, 2017).

17. The District Court did not enter an order certifying a class prior to the Debtor's bankruptcy filing.

**RELIEF REQUESTED**

18. By this objection, the Movants respectfully requests that this Court enter an order disallowing and expunging Claim 21.

**OBJECTION**

19. Section 502(b) of the Bankruptcy Code governs the allowance or disallowance of claims and provides in pertinent part that:

---

[2] It is not possible to tell from the contents of Claim 21 or its related attachments how the estimate of putative claimants rose from a number in the "hundreds or thousands," as alleged in the Class Action, to 50,000 as alleged in the proof of claim. Nor is it possible to discern any evidence on which either of these estimates were based.

> the court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

20.     In the present case, the Court should disallow and expunge Claim 21 because it is unenforceable against the Debtor under applicable law. Claim 21 is unenforceable because: (a) the Debtor did not violate the TCPA or the MDTCPA; (b) the Debtor did not violate the Wiretap Act; (c) the Representative has not received an order from this Court authorizing the application of Bankruptcy Rule 7023 in these proceedings; (d) the application of Bankruptcy Rule 7023 in this instance would confer no benefit on the claims resolution process established by the Bankruptcy Code; and (e) Claim 21 is unnecessarily duplicative of claim number 22-1.

A.     *The Debtor did not violate the TCPA or the MDTCP*

21.     The relevant portion of the TCPA "makes it 'unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service, . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.'" *King v. Time Warner Cable Inc.*, 894 F.3d 473, 474 (2d Cir. 2018) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)) (alterations in original).

22.     To be liable for damages under the TCPA, the Debtor had to have used an "automatic telephone dialing system" to contact the Representative (or the putative class claimants). *Id.* The TCPA does not prohibit a party from making live telephone calls to a person's cellular phone. *Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744, 754 n.14 (W.D. Tex. 2011).

23. The TCPA creates a private right of action for any person receiving calls prohibited by the act. 47 U.S.C. § 227(b)(3). Parties receiving prohibited calls may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater . . . ." *Id*. at § 227(b)(3)(B). If a court finds that the defendant "willfully or knowingly" violated the TCPA, it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." *Id*. at § 227(b)(3)(C).

24. The MDTCPA makes any violation of the TCPA a violation of Maryland state law. Md. Code Ann., Com. Law § 14-3201(2). The MDTCPA provides statutory damages of $500 for each violation or actual damages, whichever is greater, to any Maryland resident who receives calls in violation of the act. *Id*. at § 14-3202(b)(2).

25. While it does not appear that any court has yet ruled on the issue, several courts have expressed doubts that parties are entitled to receive double damages for acts constituting violations of the TCPA and MDTCPA. *See*, *Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 846 (D. Md. 2011) (noting "[T]his Court concludes, at least preliminarily, that Plaintiffs are likely not entitled to damages under both statutes."); *see also Boger v. Trinity Heating & Air, Inc.*, Civil Action No. TDC-17-1729, 2018 U.S. Dist. LEXIS 64981, at *8 (D. Md. Apr. 18, 2018) (citing *Pasco*).

26. The Debtor did not violate the TCPA or the MDTCPA because it did not use an "automatic telephone dialing system" with respect to the Representative. Rather, the Debtor placed calls to borrowers' references, like the Representative and Mr. Sprye, using an ordinary telephone line only. Accordingly, the Court should disallow and expunge Claim 21.

B. *The Debtor did not Violate the Wiretap Act*

27.     The Rooker-Feldman doctrine divests a federal court of subject matter jurisdiction over an action where entertaining the action would "'be the equivalent of an appellate review of [the state court] order.'" *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (quoting *FOCUS v. Allegheny County Ct. of Common Pleas*, 75 f.3d 834, 840 (3d Cir. 1996)) (alteration in original).

28.     Maryland's wiretapping act prohibits willfully recording a phone call in Maryland unless both parties consent. *See* Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1). However, the State Court previously dismissed the Representative's class action claims holding that the Wiretap Act "does not proscribe the interception of telephone calls when it is done out-of-state." *Sprye*, No. 423332-V, 2017 Md. Cir. Ct. LEXIS 7 at *10.

29.     Asking this Court to approve the payment of damages that the state court has already rejected is expressly barred under the Rooker-Feldman doctrine. The Court should therefore disallow and expunge Claim 21.

C. *The Court has not yet Authorized the Application of Rule 7023 in this Case*

30.     Bankruptcy Rule 7023 normally applies only in adversary proceedings. *See* Fed. R. Bankr. P. 7023. However, Bankruptcy Rule 9014 "authorizes the bankruptcy court, on motion, to make 'one or more of the other rules in Part VII' applicable to contested matters, which includes Rule 7023." *Gentry v. Siegel*, 668 F.3d 83, 88 (4th Cir. 2012).

31.     Allowing Claim 22 would be procedurally inappropriate because the Representative has not timely sought this Court's authorization to apply Rule 7023 in this case. *See In re Computer Learning Ctrs., Inc.*, 344 B.R. 79, 87 (Bankr. E.D. Va. 2006) ("[T]he proponent of the class proof of claim must seek and must obtain application of Rule 7023. . .

Without that order Rule 7023 is not applicable to the proof of claim and a class proof of claim is improper.").

    **D.**    *No Benefit would Accrue to either the Claimants or the Estate from Applying Rule 7023 Rather than Utilizing the Normal Claims Administration Procedures already Supplied by the Bankruptcy Code*

32.    Generally, a bankruptcy court will only apply Rule 7023 to allow the filing of a class claim where "the benefits of applying Rule 7023 (and Civil Rule 23) are superior to the benefits of the standard bankruptcy claims procedures." *Gentry*, 668 F.3d at 93. Making such a determination does not require the "extensive discovery related to class certification . . . ." *Id*.

33.    Under the standard bankruptcy claims administration procedures already in place, "all claims could be consolidated in one forum; . . . claimants could file proofs of claim without counsel; and . . . filing individual claims would impose 'virtually no costs' on claimants." *Id*. at 92-93.

34.    In contrast, proceeding under Rule 7023 "would involve expensive, time-consuming, protracted litigation that could delay and lessen the distribution of the Debtors' assets to the creditors." *Id*.

35.    Moreover, the considerations that make class actions efficient methods of resolving multi-party litigation in non-bankruptcy proceedings do not apply with the same force in bankruptcy. First, "[t]he risk of inconsistent adjudications . . . is less likely in a bankruptcy case [because] all adjudications are in the same bankruptcy court and before the same bankruptcy judge." *In re Computer Learning Ctrs., Inc.*, 344 B.R. at 92.

36.    Second, the Bankruptcy Code already "presents many of the same mechanisms to process large numbers of claims as a class action." *Id*. As the Bankruptcy Court for the Eastern District of Virginia explained about the bankruptcy claims administration process:

> There are established mechanisms for notice. Established procedures exist for managing a large number of claimants. All proceedings are centralized in a single court with nationwide service of process. There is no race to judgment since all the debtor's assets are under control of the bankruptcy court.

*Id.*

37. <u>Third</u>, even if the claim were administered using Rule 7023, the putative class claimants would still be required to file individual proofs of claim—either in the "bankruptcy case in order to share in any distribution from the estate or . . . in the class action to share in any distribution from any recovery by the class." *Id.*

38. <u>Finally</u>, allowing Claim 21 to proceed as a class claim would undermine the fairness of any distributions received by the unsecured creditors. The *Computer Learning Centers* court explained:

> Class members, if the class proof of claim were to be allowed, should receive the same prorata distribution as other unsecured creditors of their class. It is not likely that this result would be achieved if a single award were made to the class to be distributed by a class administrator rather than the trustee in bankruptcy. Without knowing the precise amount of each claim, it is more likely that a class member would receive more or less than his prorata share, but not exactly his prorata share. Either a class member is disadvantaged by the class action or the other creditors are disadvantaged.

*Id.*

39. This final concern seems extraordinarily ominous in light of the fact that the Representative has estimated the number of putative class claimants at anywhere from a few hundred to 50,000 and seeks an unsecured claim in the amount of $36,000,000.00. These estimations are not based on any actual evidence, but are instead entirely speculative. Allowing Claim 21 to proceed as a class, when there is no evidence to support these estimations, threatens to upend the timely administration of all of the other claims filed by legitimate creditors.

40. Since the standard claims administration process already supplies adequate tools to deal with any claimants who might contend the Debtor contacted them in violation of the TCPA or MDTCPA, there is no reason for the Court to authorize the use of Rule 7023. The Court should therefore disallow and expunge Claim 21.

E. *Claim 21 is Duplicative*

41. Bankruptcy Rule 3007 illustrates that claims can be denied where they are duplicative of other claims. *See* Fed. R. Bankr. P. 3007(d)(1).

42. Claim 21 is entirely duplicative of Claim 22-1 and should therefore be disallowed.

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court enter an order: (a) disallowing and expunging Claim 21; and (b) granting such further relief as is just and proper.

Dated: Charlotte, North Carolina
June 28, 2019

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
Caleb Brown (Bar No. 41131)
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for the Movants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing *Objection to Claim of Evelyn Sprye* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case and upon:

Richard S. Gordon
Gordon, Wolf & Carney CHTD
100 W. Pennsylvania Ave, Suite 100
Towson, MD 21204

Dated: Charlotte, North Carolina
June 28, 2019

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
Caleb Brown (Bar No. 41131)
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for the Movants*